UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRACEY DURLEY                                    CIVIL ACTION

VERSUS                                           NO: 06-5681

THE OFFSHORE DRILLING                            SECTION: "J" (2)
COMPANY, ET AL

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The issue of the validity of a seaman's release is before the Court on remand from the United States Court of Appeals for the Fifth Circuit. Following a trial without jury on February 13, 2007 the Court issued written Findings of Fact and Conclusions of Law finding that the seaman's release was invalid due to "mutual mistake regarding the true nature of Mr. Durley's injuries." (Rec. Doc. 52). The Offshore Drilling Company ("TODCO") took an interlocutory appeal of this Court's finding that the release was invalid. On appeal the Fifth Circuit held that there was not a mutual mistake with regard to the diagnosis of Durley's knee and neck injuries, vacated the earlier findings of this Court, and remanded the case for further consideration of

Durley's other arguments for the invalidity of the release. Now in accordance with the Fifth Circuit's opinion and after further consideration of the testimony and exhibits presented at trial and the applicable law, the Court issues the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a).

**FINDINGS OF FACT**

On July 2, 2006, Tracey Durley was employed by TODCO as a floorhand on the TODCO Rig 46, an inland drilling barge owned and operated by TODCO. Durley was a seaman. He was injured in an accident on July 2, 2006 upon the TODCO Rig 46. As a result of the accident, Durley suffered various injuries, including knee injuries to the lateral collateral ligament, posterior collateral ligament, and posterolateral corner, as well as injuries to his cervical spine.

Durley was initially treated for his injuries at the Teche Regional Medical Center, at which time the doctor noted contusions and abrasions to Durley's left hip, left leg and, and left shin. Durley was subsequently examined by Dr. Benjamin Leggio on or about July 5, 2006, at which time he again complained of pain in his abdomen, left pelvis, and left leg.

Plaintiff was seen by Dr. John Sandifer on July 18, 2006 and August 9, 2006. During the July 18, 2006 visit Dr. Sandifer diagnosed Durley as suffering from a strain or contusion to the left groin, left hip, and left lower abdomen. Durley was also examined by Dr. William Ball on July 18, 2006, at which time hernia and internal abdominal injuries were ruled out.

On or about July 12, 2006, ten days after Durley was injured, the representatives of Shuman Consulting ("Shuman") who were adjusting the claim for TODCO, decided to offer Durley $3,000 to release any and all claims arising out of the accident. This amount represented roughly the amount of pay Durley would have received for the days of work he missed to that point. This amount was not revised as Durley continued to miss work, but TODCO did provide an additional $4,565.20 in maintenance and voluntary compensation benefits to Durley before the release was signed.

On August 10, 2006 Durley executed release documents purporting to settle all claims arising out of the July 2, 2006 accident. Durley was not represented by counsel in connection with the settlement.

The Court finds the facts surrounding the circumstances of the release to be significant, including the details provided in the live testimony of various employees of Shuman and Durley

himself.  First, it is undisputed that at no time in the creation or signing of the settlement was Durley represented by counsel.  Prior to any proposed settlement the Shuman adjusters were aware that Durley was in significant financial trouble.  Charles Johnson, an adjuster with Shuman testified that he was aware that Durley was in need of money.  Durley had informed him that his family was about to be kicked out of the FEMA trailer that they were living in as a result of Hurricane Rita.  Additionally, Durley told Johnson that the sewerage lines had been connected incorrectly to his FEMA trailer and that the state had cut off his electricity and told him that he could no longer stay in the trailer.  Shuman was aware that Durley was pressed for money to repair his home and to buy school supplies for his children

On July 12, 2006, Randall Kaiser from Shuman spoke to Durley by phone and subsequently drafted a memo regarding the conversation.  During that conversation Durley informed Kaiser that he was in serious need of money.  Kaiser noted in a memo prepared after the phone conversation that "Mr. Durley is in need of his paycheck."  Trial Ex. 5.  The memo further states Kaiser's recommendation that the case be settled.  <u>Id.</u>  Shuman again contacted Durley on July 13, 2006 and offered him a $3,000 settlement.  Trial Ex. 6.  Prior to Durley accepting the settlement or receiving a work release from his doctor, Shuman

set up a settlement and submitted a request for the $3,000 check. Durley was told by Shuman that he had to get a doctor's release in order to get the settlement check. He was worried about his job because prior to signing any settlement agreement TODCO told him that they did not have to hold a job for him if he didn't return to work. Durley went to the settlement conference having no understanding of the paperwork he would have to sign and only knew that he was going to get the $3,000.

The settlement was signed on August 10, 2006 at the offices of Preis and Roy, TODCO's attorneys. According to TODCO's attorney, Jeffrey Riggs, Durley did not see the settlement documents until just ten or twenty minutes before the settlement meeting began. Riggs was unsure if Durley ever read the documents himself. Riggs briefly discussed the rights that Durley would be giving up, Durley agreed that he understood, and then they went on the record to review the settlement agreement. Riggs reviewed the settlement page by page, though did not necessarily read each page, and had Durley initial each page as it was reviewed, instead of initialing the entire document after a complete review of the settlement. Durley was never told that he should consult with an attorney. When he arrived at the Preis and Roy offices, Durley was surprised to find that he was meeting with any attorney. During the settlement conference Durley never

sat down.  He appeared fidgety to those involved and had informed a Shuman representative who was present that he had Attention Deficit Hyperactivity Disorder ("ADHD").  Additionally, during the entire settlement meeting Durley appeared to be in a rush to finish the settlement and get his check.  Several times he asked if the conference could go faster.  Durley even asked whether it was possible for him to cash the settlement check before he left the Preis and Roy offices.

### CONCLUSIONS OF LAW

Jurisdiction over Durley's challenge to the validity of the seaman's release is based on this Court's original jurisdiction over admiralty and maritime claims.  U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333.  The validity of a seaman's release is governed by general maritime law.  <u>Robertson v. Douglas S.S. Co.</u>, 510 F.2d 829, 835 (5th Cir. 1975).

Four factors have been identified as relevant to an analysis of whether a seaman's release is valid.  Those factors include: (1) "the nature of the legal advice available to the seaman at the time of signing the release;" (2) "the adequacy of the consideration;" (3) "whether the parties negotiated at arm's length and in good faith;" and (4) "whether there was the appearance of fraud or coercion."  <u>Simpson v. Lykes Bros., Inc.</u>,

6

22 F.3d 601, 602 (5th Cir. 1994)(citing <u>Borne v. A & P Boat Rentals No. 4, Inc.</u>, 780 F.2d 1254, 1256-57 (5th Cir. 1986)); <u>see also</u> <u>Garrett v. Moore-McCormack Co.</u>, 317 U.S. 239, 247-48 (1942). The defendant seeking to rely on the settlement, in this case TODCO, bears the burden of establishing the validity of the release. <u>Id.</u> (citing <u>Castillo v. Spiliada Maritime Corp.</u>, 937 F.2d 240, 244 (5th Cir. 1991)). Although adequacy of the consideration is a factor to be considered, it is only relevant as an indication of whether the seaman fully understood his rights and the consequences of the settlement, and cannot, on its own, invalidate a release. <u>Borne</u>, 780 F.2d at 1257. If the consideration is inadequate then the defendant's burden becomes "particularly heavy." <u>Davis v. American Commercial Lines</u>, 823 F.2d 1006, 1008 (6th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1067 (1988) (citing <u>Garrett</u>, 317 U.S. at 248). The ultimate concern in a case such as this "is not whether the seaman has received what the court believes to be adequate consideration, but rather whether the seaman relinquished his rights with an informed understanding of his rights and a full appreciation of the consequences when he executes a release." <u>Simpson</u>, 22 F.3d at 602 (quoting <u>Stipelcovich v. Sand Dollar Marine, Inc.</u>, 805 F.2d 599, 606 (5th Cir. 1986)).

  Considering all of these factors, TODCO has not met its

burden of proving that the seaman's release is valid. First, the settlement amount of $3,000 is not adequate compensation considering Durley's serious knee and back injuries. More importantly, at no point in time was Durley represented by counsel. In fact, when he arrived at the Preis and Roy offices to review the settlement documents for the first time and sign the release, he was surprised to interact with any lawyers. From early after the accident, Shuman was aware of Durley's serious financial troubles. A memo created by Randall Kaiser indicated that Durley informed him of his serious financial difficulties and that he wanted to get back to work as soon as possible. As a result of this information, Kaiser recommended a settlement. Shuman adjusters knew that Durley was in financial trouble and needed money for a variety of reasons, including fixing his home and providing for his children. Throughout the period from the accident to the signing of the settlement, Durley clearly exhibited that he wanted to return to work because of financial pressures. Shuman was so certain that Durley would accept the money that a settlement conference was arranged prior to Durley even being given a work release from his doctors or agreeing to the settlement. During the settlement conference Durley appeared to all participants as having difficulty paying attention, a fact that Durley attributed during the conference to his ADHD. Durley

was apparently so eager to receive the $3,000 settlement that he asked whether he could cash the check while still at Preis and Roy and indicated that he needed the money immediately.

Taking this entire factual scenario into consideration it is clear to the Court that Durley received no legal advice in accepting an inadequate settlement that was not based on any negotiations between Durley and TODCO. Durley, despite his medical problems, consistently expressed to Shuman that he needed money and needed to get back to work because of his financial troubles. During the settlement conference Durley's need for the money was apparent as was his inability to pay attention to the proceedings. Under these circumstances the Court is not convinced that Durley signed the release with full knowledge of his rights and a full appreciation of the consequences of the release other than that he would receives a few thousand desperately needed dollars. As a result, TODCO has failed to prove that the seaman's release is valid. The release must be set aside and TODCO's Fourth Defense, Fifth Defense, and Counterclaim (Rec. Doc. 4) are deemed meritless. A scheduling conference by telephone with the Court's case manager is scheduled for **April 7, 2009 at 10:30 a.m.** to set deadlines for the remainder of the case.

New Orleans, Louisiana this the 24th day of March, 2009.

                                                               */s/ Carl J. Barbier*
                                                          CARL J. BARBIER
                                                 UNITED STATES DISTRICT JUDGE